Charles A. Higgs, Esq.
Law Office of Charles A. Higgs
*Proposed Special Litigation Counsel for the Debtor*
44 S. Broadway, Suite 100
White Plains, NY 10601
(917) 673-3768
Charles@FreshStartEsq.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| CASABELLA CONTRACTING OF N.Y., INC., | CASE NO. 22-22205 (SHL) |
| DEBTOR | |

------------------------------------------------------------X

**DEBTOR'S MOTION, PURSUANT TO SECTION 543 OF THE BANKRUPTCY CODE DIRECTING THE RECEIVER TO DELIVER THE DEBTOR'S PROPERTY AND ENJOINING THE RECEIVER FROM INTERFERRING WITH THE DEBTOR'S OPERATIONS**

Pursuant to Sections 105, 362(a), 363, 541, and 543 of title 11 of the United States Code (the "Bankruptcy Code"), the debtor and debtor-in-possession Casabella Contracting of NY, Inc. ("Debtor"), by and through its proposed special litigation counsel, hereby submits this motion for entry of an Order substantially in the form attached as **Exhibit A**, compelling the state court receiver, Frank Pignataro to: (i) turnover the Debtor's property; (ii) provide documentation and information with respect to any vehicles or other property transferred during the receivership; (iii) provide an accounting; (iv) enjoining the Receiver or its agents from interfering with Debtor's property and operations; and (v) granting such further relief as the Court deems just and proper.

**PRELIMINARY STATEMENT**

1. Pursuant to Sections 105, 362, 541, and 543 of the Bankruptcy Code, the Debtor seeks an order compelling the state court receiver, Frank Pignataro, to: (i) turnover the Debtor's property; (ii) provide documentation and information with respect to any vehicles or other property transferred during the receivership; (iii) provide an accounting; (iv) enjoining the Receiver or its agents from interfering with Debtor's property and operations; and (v) granting such further relief as the Court deems just and proper ("Debtor's Motion to Compel").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein are Sections 105, 541, and 543 of the Bankruptcy Code.

## BACKGROUND

4. On April 25, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating and managing its affairs as a Debtor in Possession under Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor is a New York Corporation organized under the laws of the State of New York. The Debtor is a construction and general contracting company that performs residential and commercial building renovations, carpentry, floor work, commercial construction, drainage contracting, and excavation contracting. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

6. The Debtor's is also certified as a Minority/Women/Disadvantaged Business Enterprise M/W/DBE and qualified to perform Commercial and State Funded Projects in the New York Metro Area. Using its M/W/DBE certifications, the Debtor procured construction contracts with many of New York's prominent government agencies such as the DEP ("Department of Environmental Protection") and OGS ("Office of General Services"). In addition, the Debtor began performing prevailing rate jobs and entered into collective bargaining agreements with approximately nine (9) trade unions in New York. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

7. From 2012 to 2019, the Debtor maintained a staff from fifteen (15) to fifty (50) employees, with an office and mobile of staff ranging from six (6) to nine (9) employees.

The Debtor utilized the Women Minority Disadvantaged Business Certifications which allowed it to make bid and secure contracts for NY State and Federal projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

8. In or about September 28, 2017, the Debtor's estranged husband, Frank Pignataro incorporated Casabella Landscaping, Inc. Casabella Landscaping performed residential and commercial landscaping jobs, snow removal, and small construction projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

9. In 2019, the Debtor's principal and her estranged husband Frank Pignataro, began to experience marital problems that put a strain on the Debtor's day-to-day business operations. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

10. As a result, Mr. Pignataro began to interfere with the Debtor's daily operations in an attempt to expand his influence and exercise control over the Debtor's principal and the Debtor's contracted projects. For example, Mr. Pignataro scheduled meetings with contractors, project managers, union members and foreman in secret, and without Debtor's principal being present. Mr. Pignataro's actions led to a breakdown in communication between the Debtor's principal and her staff which had a detrimental effect on the management of the Debtor's works in progress. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

11. In March of 2020, the Debtor was subject to numerous work stoppages that continued to the present date. The majority of these work stoppages were the result of the Covid-19 pandemic, rising construction material costs, and supply chain issues that hindered the Debtor's ability to realize profits from its projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

12. The Covid-19 pandemic intensified the Mr. and Mrs. Pignataro's marital troubles and ultimately, on August 13, 2021, Mr. Pignataro filed an action for divorce in the Westchester

County Supreme Court, Index No.61117/2021. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

13. On September 24, 2021, Hon. Lewis J. Lubell, J.S.C. appointed Frank Pignataro the temporary Receiver of the Debtor. Judge Lubell is the presiding judge in the pending divorce case, *Frank Pignataro v. Laura M. Pignataro*, in the Supreme Court of the State of New York, County of Westchester, Index No. 61117/2021. The law firm of Mackey, Butts, & Whalen, LLP has been acting as attorneys for the receiver. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

14. Notably, the receiver, Frank Pignataro, was not appointed from the approved list of receivers as required by 22 NYCRR 36 and 22 NYCRR 36.1(a)(8); further, Frank Pignataro, individually, is a party in the underlying action from which his appointment as receiver arises.

15. Part 36 of the Rules of the Chief Judge, provides:

> Public trust in the judicial process demands that appointments by judges be fair, impartial and beyond reproach. Accordingly, these rules are intended to ensure that appointees are selected on the basis of merit, without favoritism, nepotism, politics, or other factors unrelated to the qualifications of the appointee or the requirements of the case.
> The rules cannot be written in a way that foresees every situation in which they should be applied. Therefore, the appointment of trained and competent persons, and the avoidance of factors unrelated to the merit of the appointments or the value of the work performed, are fundamental objectives that should guide all appointments made, and orders issued, pursuant to this Part.
>
> 22 NYCRR 36

16. 22 NYCRR 36.1 provides that part 36 shall apply to the appointment of receivers by any judge or justice of the Unified Court System. *See*, 22 NYCRR 36.1(a)(8).

17. Since, the appointment of Mr. Pignataro as temporary receiver, no less than thirteen (13) lawsuits have been filed against the Debtor. Mr. Pignataro has banned Debtor's principal from the Debtor's office location, changed the login information and passwords for accessing the

Debtor's online bank accounts, financial records, payroll accounts, and all other electronically stored information of the Debtor. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

18. The Debtor believes that Mr. Pignataro has sold and transferred assets of the Debtor for less than market value, and without obtaining approval from the state court. The Debtor further believes that Mr. Pignataro has moved many of the Debtor's motor vehicles, pick-up trucks, and excavators from the yard where they were previously stored to an undisclosed location. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**

19. Upon information belief, Mr. Pignataro has sold, transferred, or otherwise disposed of the Debtor's tools, and construction equipment for less than market value. Upon information and belief, Mr. Pignataro has transferred the Debtor's tool, construction equipment, motor vehicles, pick-up trucks, and excavators to his company Casabella Landscaping without providing consideration to the Debtor. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

20. On the Petition Date, the Debtor promptly provided the Receiver and the Receiver's attorneys with notice of the Debtor's Bankruptcy Filing and demanded that the Receiver turnover property of the estate by the close of business on April 25, 2022. **See, ¶ 4 and Exhibit A of Affirmation of James Rufo in Support of Debtor's Motion to Compel.**

21. Debtor, through counsel, sent numerous follow up emails to Receiver's attorney and also had several phone calls with Receiver's attorney regarding Debtor's demand that the Receiver turnover the Debtor's property. **See, ¶ 5-9 of Affirmation of James Rufo in Support of Debtor's Motion to Compel (the "Rufo Affirmation")**

22. As set forth in the Rufo Affirmation, Receiver has failed to provide the Debtor with many of the documents and information requested by Debtor's counsel, including basic information regarding the status of operations, the parties to which valuable contracts of the Debtor were transferred, and information with respect to other assets, including vehicles and equipment of the Debtor that appear to have been transferred for little, if any, consideration during the receivership. The lack of information received from the Receiver reinforces the Debtor's belief that significant waste of the Debtor's assets has occurred during the receivership and that a number of Debtor's assets were transferred by the Receiver without authority. **See, ¶ 8 of the Rufo Affirmation.**

23. The Debtor seeks an Order compelling the Receiver to turnover the Debtor's property, including but not limited to:

  I. All of Debtor's books and records
  II. All tax records from September 24, 2021, forward
  III. Current Accounts Receivable
  IV. Current Accounts Payable
  V. Current Balance Sheet
  VI. Log in information and access to QuickBooks and Dropbox
  VII. Log in information and access to the bank accounts (General, Payroll, Money Market)
  VIII. Status of Taxes with backup
  IX. Keys to the Debtor's Vehicles and Equipment
  X. Keys to the Debtor's Offices

24. The Receiver's refusal to turnover to the Debtor all of the documents, information, accounts, vehicles, equipment, and other property belonging to the Debtor and the bankruptcy estate is interfering with the Debtor's ability to prosecute this bankruptcy.

25. In addition to its request for an Order compelling turnover, the Debtor also seeks an immediate order enjoining the Receiver from (I) taking any further steps or actions on behalf of the Debtor; (II) Interfering with the Debtor's Operations or assets; or (III) otherwise using or transferring the Debtor's property.

26. The Debtor is concerned that absent an order enjoining the Receiver, the Receiver will continue to transfer and/or deplete Debtor's assets post-petition in violation of the bankruptcy code. The Receiver's actions also put the Debtor and the estate at risk of incurring further liabilities.

27. The Receiver is aware of the Debtor's bankruptcy filing and of his obligation under the bankruptcy code to turnover the Debtor's property. The Receiver's failure to comply with Debtor's turnover demand constitutes a violation of Section 543 of the Bankruptcy Code, a likely constitutes a violation of the bankruptcy stay. Furthermore, as a result of the Receiver's failure to comply with the turnover demand, the Receiver could be engaging in improper post-petition transfers, and unauthorized uses of the Debtors' property in violation of Sections 362, 363, 543, and 549 of the Bankruptcy Code.

28. Based upon the foregoing, the Debtor respectfully requests that the Receiver and the Receiver's attorneys and agents, be directed to deliver to the Debtor all property of the Debtor or the bankruptcy estate in the Receiver's custody and control, including but not limited to, all books, records, vehicles, equipment, and other property of the Debtor. The Debtor further requests that the Court immediately direct the Receiver to have all cash and all funds held by them belonging to the Debtor or the bankruptcy estate or deposited in the Receiver's bank accounts on behalf of the Debtor, immediately transferred to the respective Debtors' debtor in possession bank account.

29. Moreover, the Receiver should be enjoined from taking any further steps to act on behalf of the Debtor or interfering with the Debtors' operations or the ability of the Debtors' directors and officers to direct the Debtor's activities and affairs.

30. Absent the Court issuing an order enjoining the Receiver, the Debtor and the estate are at risk of suffering immediate and irreparable harm.

31. Additionally, absent an accurate, and immediate accounting from the Receiver, neither the Debtor, the U.S. Trustee, nor this Court, will be able to determine what property came in, and what went out, and whether the Receiver has engaged in any unauthorized or improper transactions. Nor will the estate be able to ascertain whether it has any claims against third parties arising out of any of the Receiver's transfers or transactions of the Debtor's property.

32. Further, as the Debtor's estate has been required to incur substantial attorneys' fees with respect to this matter, it is respectfully respected that the Receiver be required to reimburse the Debtor for their costs and expenses, including reasonable attorneys' fees, incurred in connection with this Motion.

## BASIS OF RELIEF REQUESTED

33. In accordance with Section 541(a) of the Bankruptcy Code, property of the bankruptcy estate includes "all legal and equitable interests of the Debtor in property as of the commencement of the case;" *See*, 11 U.S.C. 541. Property held by the receiver at the commencement of bankruptcy case constitutes property of the bankruptcy estate under Section 541 of the Bankruptcy Code. *See, Yellow Cab Coop. Ass'n v. Mathis (In re Yellow Cab Coop. Ass'n*, 178 B.R. 265, 269-70 (Bankr. D. Colo. 1995).

34. The term "custodian" as defined under Section § 101(11) of the Bankruptcy Code includes a receiver.

35. Section 543 of the Bankruptcy Code dictates the obligations and requirements of a custodian upon being notified of the bankruptcy filing. Section 543(a) provides:

> A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

11 U.S.C. § 543(a)

Section 543(b) provides that:

> A custodian shall—
> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
> (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian."

11 U.S.C § 543(b)

36. Compliance with Section 543 of the Bankruptcy Code is not optional. *See*, *In re Deflora Lake Development Associates, Inc.*, 571 B.R. 587, 598 (Bankr. S.D.N.Y. 2017). [T]he default position under the Bankruptcy Code is that a debtor is entitled to custody of its property, and 11 U.S.C. § 543 directs custodians of estate property to turnover such property to the Trustee." *In re Deflora Lake Development Associates, Inc.*, 571 B.R. 598 *quoting In re Bullitt Utilities, Inc.*, 558 B.R. 173, 178 (Bankr. W.D. Ky. 2016).

37. For the reasons set forth above, the Debtor requests that the Court direct the Receiver to immediately turnover property of the Debtor and provide the required accounting.

38. In the event the Receiver, continues to refuse to comply with his requirements under Section 543 of the Bankruptcy Code, the Debtor requests that the Court impose sanctions on the Receiver pursuant to Sections 105(a) and 362(k) of the Bankruptcy Code or in the alternative that the Court surcharge the Receiver pursuant to Section 543(c)(3) of the Bankruptcy Code.

## **PRELIMINARY RELIEF PENDING A HEARING**

39. Pursuant to sections 105(a), 362(a), 363, and 543 of the Bankruptcy Code, and/or Bankruptcy Rule 7065, the Debtor requests entry of a temporary restraining order and preliminary injunction given the immediate and irreparable injury, loss or damages that will likely result if a temporary restraining order is not entered pending a hearing on this Motion.

9

40. Accordingly, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed as **Exhibit A**, restraining the Receiver, his agents, and any and all other persons or agents acting under the their direction or control, from interfering with the Debtor's businesses and the Debtor's ability to operate their businesses as debtor in possession, and directing the Receiver to immediately turn over to the Debtor any and all property necessary to operate the Debtor's Businesses.

41. No prior application has been made for the relief sought herein.

**WHEREFORE**, the Debtor requests that the Motion be granted, and that the Debtor be granted such other and further relief as is just and proper.

Dated: White Plains, NY
May 3, 2022

Respectfully submitted,

By:     */s/ Charles A. Higgs*
Charles A. Higgs, Esq.
Law Office of Charles A. Higgs
*Proposed Special Litigation Counsel for the Debtor*
44 S. Broadway, Suite 100
White Plains, NY 10601
(917) 673-3768
Charles@FreshStartEsq.com