UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

In Re:

Casabella Contracting of NY, Inc.    Ch. 11
                                     Case No. 22-22205-SHL
Debtor.

---------------------------------x

**DEBTOR'S EX-PARTE APPLICATION PURSUANT TO BANKRUPTCY RULE 2004 SEEKING ENTRY OF AN ORDER: DIRECTING FRANK PIGNATARO TO APPEAR FOR EXAMINATION AND FURTHER DIRECTING THE PRODUCTION OF DOCUMENTS**

Casabella Contracting of NY, Inc. (the "Movant" or "Debtor"), by its proposed special litigation counsel, Charles A. Higgs of The Law Office of Charles A. Higgs, makes this application seeking entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004-1 directing Frank Pignataro to produce certain documents and to appear for examination under oath. In support of its Application, the Debtor states as follows:

**Background to the Motion**

1. On On April 25, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is a New York Corporation organized under the laws of the State of New York. The Debtor is a construction and general contracting company that performs residential and commercial building renovations, carpentry, floor work, commercial construction, drainage contracting, and excavation contracting. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

3. The Debtor is also certified as a Minority/Women/Disadvantaged Business Enterprise M/W/DBE and qualified to perform Commercial and State Funded Projects in the New York Metro Area. Using its M/W/DBE certifications, the Debtor procured construction contracts with many of

1

New York's prominent government agencies such as the DEP ("Department of Environmental Protection") and OGS ("Office of General Services"). In addition, the Debtor began performing prevailing rate jobs and entered into collective bargaining agreements with approximately nine (9) trade unions in New York. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

4.    From 2012 to 2019, the Debtor maintained a staff from fifteen (15) to fifty (50) employees, with an office and mobile of staff ranging from six (6) to nine (9) employees.
The Debtor utilized the Women Minority Disadvantaged Business Certifications which allowed it to make bid and secure contracts for NY State and Federal projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

5.    In or about September 28, 2017, the Debtor's estranged husband, Frank Pignataro incorporated Casabella Landscaping, Inc. ("Casabella Landscaping"). Casabella Landscaping performed residential and commercial landscaping jobs, snow removal, and small construction projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

6.    In 2019, the Debtor's principal and her estranged husband Frank Pignataro, began to experience marital problems that put a strain on the Debtor's day-to-day business operations. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

7.    As a result, Mr. Pignataro began to interfere with the Debtor's daily operations in an attempt to expand his influence and exercise control over the Debtor's principal and the Debtor's contracted projects. For example, Mr. Pignataro scheduled meetings with contractors, project managers, union members and foreman in secret, and without Debtor's principal being present. Mr. Pignataro's actions led to a breakdown in communication between the Debtor's principal and her staff which had a detrimental effect on the management of the Debtor's works in progress. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

8. In March of 2020, the Debtor was subject to numerous work stoppages that continued to the present date. The majority of these work stoppages were the result of the Covid-19 pandemic, rising construction material costs, and supply chain issues that hindered the Debtor's ability to realize profits from its projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

9. The Covid-19 pandemic intensified the Mr. and Mrs. Pignataro's marital troubles and ultimately, on August 13, 2021, Mr. Pignataro filed an action for divorce in the Westchester County Supreme Court, Index No.61117/2021. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

10. On September 24, 2021, Hon. Lewis J. Lubell, J.S.C. appointed Frank Pignataro the temporary Receiver of the Debtor. Judge Lubell is the presiding judge in the pending divorce case, *Frank Pignataro v. Laura M. Pignataro*, in the Supreme Court of the State of New York, County of Westchester, Index No. 61117/2021. The law firm of Mackey, Butts, & Whalen, LLP has been acting as attorneys for the receiver. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

11. Notably, the receiver, Frank Pignataro, was not appointed from the approved list of receivers as required by 22 NYCRR 36 and 22 NYCRR 36.1(a)(8); further, Frank Pignataro, individually, is a party in the underlying action from which his appointment as receiver arises.

12. Part 36 of the Rules of the Chief Judge, provides:

> Public trust in the judicial process demands that appointments by judges be fair, impartial and beyond reproach. Accordingly, these rules are intended to ensure that appointees are selected on the basis of merit, without favoritism, nepotism, politics, or other factors unrelated to the qualifications of the appointee or the requirements of the case.
> The rules cannot be written in a way that foresees every situation in which they should be applied. Therefore, the appointment of trained and competent persons, and the avoidance of factors unrelated to the merit of the appointments or the value of the work performed, are

>fundamental objectives that should guide all appointments made, and orders issued, pursuant to this Part.

22 NYCRR 36

13.    22 NYCRR 36.1 provides that part 36 shall apply to the appointment of receivers by any judge or justice of the Unified Court System. *See*, 22 NYCRR 36.1(a)(8).

14.    Since, the appointment of Mr. Pignataro as temporary receiver, no less than thirteen (13) lawsuits have been filed against the Debtor. Mr. Pignataro has banned Debtor's principal from the Debtor's office location, changed the login information and passwords for accessing the Debtor's online bank accounts, financial records, payroll accounts, and all other electronically stored information of the Debtor. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

15.    The Debtor believes that Mr. Pignataro has sold and transferred assets of the Debtor for less than market value, and without obtaining approval from the state court. The Debtor further believes that Mr. Pignataro has moved many of the Debtor's motor vehicles, pick-up trucks, and excavators from the yard where they were previously stored to an undisclosed location. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**

16.    Upon information belief, Mr. Pignataro has sold, transferred, or otherwise disposed of the Debtor's tools, and construction equipment for less than market value. Upon information and belief, Mr. Pignataro has transferred the Debtor's tool, construction equipment, motor vehicles, pick-up trucks, and excavators to his company Casabella Landscaping without providing consideration to the Debtor. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

17.    Debtor also believes that Casabella Landscaping has used the Debtor's vehicles, construction equipment, tools, and other assets without consent, authorization, or payment to the Debtor for such use.

18. On the Petition Date, the Debtor promptly provided the Receiver and the Receiver's attorneys with notice of the Debtor's Bankruptcy Filing and demanded that the Receiver turnover property of the estate by the close of business on April 25, 2022.

19. Debtor, through counsel, sent numerous follow up emails to Receiver's attorney and also had several phone calls with Receiver's attorney regarding Debtor's demand that the Receiver turnover the Debtor's property.

20. The Receiver has failed to provide the Debtor with many of the documents and information requested by Debtor's counsel, including basic information regarding the status of operations, the parties to which valuable contracts of the Debtor were transferred, and information with respect to other assets, including vehicles and equipment of the Debtor that appear to have been transferred for little, if any, consideration during the receivership. The lack of information received from the Receiver reinforces the Debtor's belief that significant waste of the Debtor's assets has occurred during the receivership and that a number of Debtor's assets were transferred by the Receiver without authority.

21. On May 3, 2022, the Debtor filed a Motion for an Order pursuant to Section 543 of the Bankruptcy Code, directing the Receiver to deliver the Debtor's Property to the Debtor, and seeking a TRO enjoining the Receiver from using the Debtor's property or interfering with the Debtor's operations. [ECF # 23 and ECF #24].

22. On May 4, 2022, the Bankruptcy Court granted Debtor's request for a temporary restraining order against the Receiver [ECF # 27].

23. In an effort to facilitate consensual resolution of the Debtor's turnover motion, the bankruptcy court held several conferences on Debtor's Turnover Motion, at which a number of parties appeared through counsel, including the Debtor and the Receiver. Despite the best efforts, a

number of questions remain as to what happened to Debtor's operations and property during the Receivership.

24. Based on the forgoing, the Movant seeks entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure in order to examine Frank Pignataro about assets, operations, and management of the Debtor, including transfers and use of assets of the Debtor by Frank Pignataro as receiver, individually, and by Casabella Landscaping a company of which Frank Pignataro is the sole shareholder.

## CAUSE EXISTS TO GRANT THE RELIEF REQUESTED

25. Rule 2004(a) provides that "on the motion of any party in interest, the court may order the examination of any entity." Courts that have analyzed Bankruptcy Rule 2004 have recognized the right of a party in interest to conduct a 2004 examination, and the permitted scope of that examination is extremely broad. See, e.g., *In re Texaco, Inc.,* 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (citing *In re Johns-Manville Corp.,* 42 B.R. 362 (S.D.N.Y.1984).

26. "Good Cause is the standard employed to determine if cause exists to support an examination under Bankruptcy Rule 2004. To obtain authority to conduct an examination, the movant must show some reasonable basis to examine the material...[and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *In re Grabill Corp.,* 109 B.R. 329, 334 (N.D. 111.1989).

27. "As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Enron Corp*., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citing *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000)) see also *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd*., 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001).

28. "Generally good cause is shown if the Rule 2004 examination is necessary to establish the

6

claim of the party seeking the examination, or denial of such request would cause the examiner undue hardship or injustice." *See In re Meticom, Inc.,* 318 B.R. 263, 268 (S.D.N.Y. 2004); *see also In re Express One Intl.,* 217 B.R. 215, 217 (Bankr. E.D.Tex.1998); *In re Hammond,* 140 B.R.197,201 (S.D. Ohio1992). "Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interest." *Hammond,* 140 B.R. at 201.

29. Discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009). As such, Bankruptcy Rule 2004 motion need not be tied to specific factual allegations at issue between parties. *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter"). Courts have recognized that Bankruptcy Rule 2004 examinations may be "broad, unfettered" and can legitimately be in the nature of a "fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008).

30. Frank Pignataro in his capacity as pre-bankruptcy receiver of the Debtor, individually, and sole shareholder of Casabella Landscaping has necessary information related to the location and extent of assets of the Debtor, claims the Debtor may hold, the Debtor's operations, the location of computers and books and records of the Debtor, potentially avoidable pre-petition transfers of the Debtor's assets, and other relevant information regarding the Debtor's bankruptcy estate.

31. Consequently, "cause" exists for the Court to compel document production under Bankruptcy Rules 2004(c), and for the issuance of an order directing the Debtors to appear for an examination under Bankruptcy Rule 2004.

32. No prior application has been made for the relief sought herein.

### Relief Requested

For the reasons set forth above, the Debtor respectfully request that an Order be entered granting the 2004 Motion and that **(a)** the Frank Pignataro be directed to appear for examination at a mutually convenient date of the parties, but no later than thirty (30) days from the date that the Frank Pignataro is served with the order directing their examination under Rule 2004; and **(b)** that Frank Pignataro be directed to produce the documents set forth in the Document Demand within twenty (20) days from the date the Rule 2004 order is served upon him.

WHEREFORE, Applicant requests that the Court grant the request and that the Court enter an Order substantially similar to the proposed attached Order.

Dated: June 9, 2022
    Bedford Hills, NY

/s/Charles A. Higgs
Charles A. Higgs
Law Office of Charles A. Higgs
Proposed Special Litigation
Counsel for the Debtor
2 Depot Plaza, Suite 1A
Bedford Hills, NY 10507
(917) 673-3768
Charles@Freshstartesq.com