James J. Rufo, Esq.
The Law Office of James J. Rufo
*Proposed Attorney for Debtor*
1133 Westchester Avenue, Suite N-202
White Plains, NY 10604
(914) 600-7161
jrufo@jamesrufolaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

IN RE:                                                                      CHAPTER 11

CASABELLA CONTRACTING OF N.Y., INC.,                 CASE NO. 22-22205 (SHL)

                                    DEBTOR

-----------------------------------------------------------X

**MOTION FOR AN ORDER HOLDING FRANK PIGNATARO AS RECEIVER IN CONTEMPT FOR VIOLATING THIS COURT'S ORDER, DATED MAY 4, 2022, SANCTIONING FRANK PIGNATARO AS RECEIVER, AND AWARDING TO DEBTOR ITS ATTORNEYS' FEES, COSTS, AND DISBURSEMENTS PURSUANT TO RULES 9014 AND 9020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. § 105(a)**

James J. Rufo, Esq., of The Law Office of James J. Rufo, proposed attorney for the debtor and debtor-in-possession Casabella Contracting of N.Y., Inc. (the "Debtor"), makes the following Affirmation in Support of Debtor's Motion for an Order Holding Frank Pignataro as Receiver in Contempt of this Court's Order, dated May 4, 2022, Sanctioning Frank Pignataro as Receiver, and Awarding to the Debtor its attorneys' fees, costs, and disbursements pursuant to Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a), 362(a), 541, and 543; and impose daily sanctions in the amount $500.00 per day in order to compel the Receiver's compliance with the directives of the Court's TRO, and sections 543 and 362(a) of the United States Bankruptcy Code; and

1.  I make this Affirmation in Support of Debtor's Motion for an Order Finding Frank Pignataro as Receiver in Contempt of this Court's Order, dated May 4, 2022, and imposing sanctions on Frank Pignataro as Receiver, including but not limited to an award of Debtor's attorneys' fees, costs, and disbursements pursuant to Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105(a) (the "Contempt Motion").

## BACKGROUND

2. On April 25, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating and managing its affairs as a Debtor in Possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. On April 25, 2022, I emailed a Notice of Bankruptcy Case Filing and Demand for Turnover of Property to the attorney, Joshua E. Mackey, Esq., for the temporary receiver.

4. Shortly thereafter, also on Monday, April 25, 2022, the receiver's attorney contacted me to discuss the Debtor's demand for turnover.

5. On April 28, 2022, the attorney for the temporary receiver provided proposed counsel for the Debtor, the following:

   i. Access to the Debtor's Dropbox account that was limited to outdated financial documents with dates on as recent as March, April, and May of 2021, and
   ii. Copies of bank statements during the receiver's tenure from October 2021 to March 2022.

6. On May 3, 2022, the Debtor filed a Motion to Compel Pursuant to Section 543 of the Bankruptcy Code, Directing the Receiver to Deliver the Debtor's Property to the Debtor, and Enjoining the Receiver from Interfering with the Debtor's Operations at ECF No. 23 and an Ex Parte Application for a T.R.O. and for a Hearing on Shortened Notice at ECF No. 24.

7. On May 4, 2022, Your Honor entered a Temporary Restraining Order ("the "TRO") and Scheduling Hearing on Debtor's Motion with the Hearing to be held on May 12, 2022. (Annexed hereto as **Exhibit "A"** is a copy of the TRO).

8. Specifically, the TRO directed the Receiver to comply with, in part, the following:

> 2. Pending a hearing and determination of the Motion, the Receiver, his agents, and any other person under his direction, are temporarily restrained, and enjoined from interfering with the

Debtor's business and the Debtor's ability to operate their business as Debtor in possession.

3. Pending a hearing and determination of the Motion, the Receiver Frank Pignataro, shall not make any disbursements from, or take any action in the administration of (i) property or alleged property of the Debtor; (ii) proceeds, product, offspring, rents, or profits of such property; or (iii) property of the Debtor's estate, except to the extent that a disbursement is necessary to preserve the value of the Debtor's estate and, in such case, notice of such disbursement shall be provided in advance to the Debtor's counsel and the United States Trustee's Office.

4. For the avoidance of doubt, all proceedings involving the Debtor pending in any other court are hereby stayed pursuant to Section 362(a) of the Bankruptcy Code until further order of this Court.

See **Exhibit A**, pg. 2, ¶¶ 2, 3, & 4.

9. Nonetheless, the Receiver failed to comply with the directives of the TRO.

### PATTERN OF NONCOMPLIANCE

10. On May 6, 2022, the undersigned received the following from the Receiver's bankruptcy attorney via email in response (the Receiver's responses are in Red) to the Debtor's May 2, 2022, letter demanding turnover:

   i. Login information for Dropbox, not a Dropbox link of only the Accounting- Will provide Marcela's Dropbox password
   ii. ALL Corporate Documents-All corporate docs are either in the office or in dropbox
   iii. ALL Contracts from January 1, 2020 to date-All in Dropbox
   iv. ALL Estimates from January 1, 2020 to date-All in Dropbox
   v. ALL Contract proposals, from January 1, 2020 to date-All in Dropbox
   vi. ALL Vehicle, and equipment information that also includes up to date insurance cards and registrations- None of Casabella Contracting vehicles are registered to Casabella Contracting's insurance lapsing due to nonpayment prior to Frank's Receivership.
   vii. Keys to ALL of the Debtor's Vehicles and Equipment- At yard. List of vehicles/equipment that Marcela provided is incorrect. Please refer to the attached corrections.
   viii. Keys to the Debtor's Offices- Realtor has keys
   ix. The location of ALL Vehicle, and equipment- At 2111 Yard
   x. ALL billing invoices for vehicles and equipment-None
   xi. Login information for the Blue Iris Security Camera system- None
   xii. A list of All Bank Accounts opened up with Account numbers and Banking contacts- Only one bank account is open at Orange Bank and Trust.

3

xiii. Login information for QuickBooks- Computer at the office, Marcela's login was not changed. She can access QuickBooks. The password for the computer is 2036. It cannot be remotely accessed; it is QuickBooks desktop edition.
xiv. An up-to-date list of Receivables and Payables from QuickBooks-In QuickBooks
xv. Current Accounts Receivable-In QuickBooks
xvi. Current Accounts Payable-In QuickBooks
xvii. Current Balance Sheet-In QuickBooks
xviii. Access to QuickBooks-Already listed.
xix. Access to Dropbox-Already listed.
xx. Access to the bank accounts (General, Payroll, Money Market)-Marcela will have to contact Orange Bank to get access to the account. I can send screenshots but I can not give her Frank's login. It is his individual profile with access to other accounts as well (ie. landscaping).
xxi. Status of Taxes with backup- Not filed.

Three trucks, (2018 Ram, 2014 Ram Diesel, & 2014 Ram Gas) were insured and registered by Casabella Landscaping with permission from Marcela. She herself went to the DMV and registered the trucks on 9/20/2021. Ownership of the trucks was never transferred to Casabella Landscaping, Inc. and Casabella Contracting still holds the title for those vehicles. Now these trucks will be returned and we will cancel the insurance and registrations. I attached a screenshot of a text from Marcela while she was at the DMV registering the trucks.

See ECF No. 36.

11. On May 12, 2022, the hearing on the TRO was held, at which a number of parties appeared, including the receiver's bankruptcy counsel who had his client with him. At the hearing, Your Honor directed the parties to arrange for an amicable turnover of property to the Debtor. The undersigned and the Receiver's bankruptcy counsel, Mr. Cushner have worked diligently to facilitate the turnover of all property belonging to the Debtor; however, Mr. Pignataro continues to interfere in the Debtor's affairs refuse to surrender property to the Debtor. Notably, at the hearing counsel for the Receiver, indicated that the Receiver was not in possession of the Debtor's vehicles.

12. On Saturday, May 14, 2022, the undersigned accompanied the Debtor's principal and her colleague to the Debtor's construction yard at 2111 Albany Post Road, Montrose, NY 10548 (the "Yard") to inspect the Debtor's motor vehicles, trucks, and construction equipment. Based on Mr. Pignataro's previous representations, all of the Debtor's trucks and equipment

4

were being safely stored at the Yard. Contrary to Mr. Pignataro's representations, only three (3) of the Debtor's vehicles were at the Yard, and two (2) of them did not start. The Yard was almost mostly occupied by triaxle dump trucks owned by Griffin's Landscaping, Inc., and DR Hauling. (Annexed hereto as **Exhibit "B"** are pictures of the Yard that were taken on May 14, 2022).

13. Also on Saturday, May 14, 2022, the undersigned accompanied the Debtor's principal and her colleague to the Debtor's business office located at 182 Lindsey Avenue, Buchanan, NY 10511 (the "Office"). The Debtor's principal hoped to gain access to the Debtor's computer server, desktop computers, business records, titles to Debtor's vehicles, and most importantly, access to the Debtor's QuickBooks software program that was stored on one of the computers at the Office.

14. Contrary to Mr. Pignataro's representations, the Debtor's computer server, all of its computers, including the computer with the QuickBooks software, business records, and vehicle titles had been removed from the Office. The undersigned communicated to the Receiver's attorney that all of the Debtor's property was missing and asked him if the Receiver had possession of the property or where it might be; the Receiver denied having any knowledge of the whereabouts of the Debtor's property.

15. Furthermore, despite the Receiver, through counsel, having previously represented to the Court that all of the Debtor's vehicles had been turned over. On May 24, 2022, the day before the continued hearing on the T.R.O. and Turnover Motion, Mr. Pignataro surrendered the Debtor's 2018 Dodge Ram 3500 truck to the Debtor. Upon inspection, the taillight was broken, the wheel well for one of the tires was damaged, the antenna was missing, and the truck bed was filled with garbage. (Annexed hereto as **Exhibit "C"** are pictures of the Debtor's 2018 Dodge Ram 3500 Diesel pickup truck on the date that it was turned over to the Debtor).

5

16. Furthermore, the Debtor has taken the position that the accounting that was provided by Mr. Pignataro to the Debtor does not satisfy the requirement of 11 U.S.C. 543(b). Mr. Pignataro has continued to provide the Debtor with evasive responses to the Debtor's requests for the turnover of property to the Debtor. (Annexed hereto as **Exhibit "D"** is a copy of the accounting provided by the Receiver).

17. On May 25, 2022, the Court held an Initial Case Conference and a continued hearing on the Debtor's Turnover Motion. At the hearing, Debtor advised that Court of the Receiver's continued non-compliance with the TRO and that the Receiver was still in possession of the Debtor's property, including, but not limited to, among other things the company computer and several vehicles. At that time, the Court advised the parties to continue to work together, and that the Receiver was to turn over all property to the Debtor. The May 25, 2022, hearing was adjourned to June 1, 2022.

18. On May 25, 2022, the Receiver delivered the Debtor's 2014 Dodge Ram 3500 Diesel pickup truck to the Debtor's office at 182 Lindsey Avenue, Buchanan, NY 10511. The 2014 Dodge Ram 3500 was returned in a damaged condition, with bald tires. (Annexed hereto as **Exhibit "E"** are pictures of the 2014 Dodge Ram 3500 Diesel pickup on the date that it was turned over to the Debtor).

19. At the June 1, 2022, hearing the Receiver admitted in open court that he was still in possession of the Debtor's property and that he had been driving at least one (1) of the Debtor's trucks despite the TRO and clear directive of the court that prohibited him from doing so.

20. Thus, the Receiver admitted that he was in violation of the TRO and the directive that the Receiver turnover all of the Debtor's property.

21. On June 2, 2022, the Receiver's attorney advised that the Debtor's Mitsubishi dump-truck was located at 110-22 Lower South Street, Peekskill, NY 10566. Coincidentally, the

Receiver's business, Casabella Landscaping, Inc. is headquartered at 110-22 Lower South Street, Peekskill, NY 10566.

22. Thereafter, the Receiver's attorney clarified that that the Debtor's 2012 Nissan UD was located at 110-22 Lower South Street, Peekskill, NY 10566, not the Mitsubishi dump-truck.

23. Furthermore, the Receiver's attorney advised that the 2012 Nissan UD was inoperable, that the keys were inside the dump-truck, and that the Debtor's principal left the dump-truck at 110-22 Lower South Street, Peekskill, NY 10566. Debtor requested that the Receiver deliver the dump-truck to the Yard; however, the Receiver refused and stated that unless this Court ordered him to do so, he would not deliver the dump-truck to the Yard.

24. To date, the Receiver has provided the Debtor with the following:

   i. 2005 Chevrolet Express 1500 Cargo / VIN: 1GCFH15T451169936
   ii. 2014 Dodge Ram 3500 Regular Cab Diesel / VIN: 3C63R3BJ1EG252280
   iii. 2000 Ingersoll Rand Air Compressor
   iv. 2018 Dodge Ram 3500
   v. 2019 Ford F250 Super Duty Regular Cab / VIN: 1FTBF2B64KED89705

25. To date, the Receiver has continued to be in possession of the Debtor's vehicles and construction equipment, including, but not limited to, the following:

   i. 2014 Dodge Ram 3500 Regular Cab Gas / VIN: 3C63R3BL6EG191056
   ii. 2003 GMC Sierra / VIN: 1GDJK34103E336947
   iii. 2012 Yanmar 100 Excavator
   iv. 2014 Bob Cat 650 / Bob Cat Skid Steer
   v. 2017 Volvo Triaxle Dump Truck
   vi. 2007 Cotra Trailer
   vii. 2009 Diamond Cargo Diamond Cargo (Enclosed Trailer)
   viii. 2012 Nissan UD 23 DH / VIN: JNAC410H2CAD15089 (At Receiver's place of business)
   ix. 2014 John Deere 245G Excavator
   x. 2015 John Deere 85G Excavator / 85G Excavator
   xi. 2015 John Deere 333E / Skid Steer

7

26. Initially, the Receiver claimed, that secured creditor John Deere repossessed the Debtor's 2014 John Deere 245G Excavator, 2015 John Deere 85G Excavator, and its 2015 John Deere 333E / Skid Steer; however, all such construction equipment is owned by the Debtor free and clear. (Annexed hereto as **Exhibit "F"** are termination of UCC Financing Statements for said equipment).

27. Contrary to the Receiver's claims, John Deere repossessed the Debtor's 2018 524K Loader and 60" Pallet Forks, 2019 85G Excavator with Aux Hydraulics with Coupler and Hydraulic Thumb, 2017 333G Compact Track LDR with 84" Bucket, and 2014 350 GLC Excavator as evidenced by the has reason to believe that the Receiver continues to use the above listed equipment to perform construction and landscaping for his personal business, Casabella Landscaping, Inc. (Annexed hereto as **Exhibit "G"** are copies of the impound notices from John Deere for said equipment).

28. The Receiver has, and continues, to take steps to conceal assets from the Debtor. Specifically, on June 9, 2022, the Debtor's principal discovered following pieces of equipment located at 299 N. Central Avenue, Hartsdale, NY 10530:

   a. 2014 Bobcat Skid Steer
   b. 2003 GMC Sierra VIN: 1GDJK34103E336947
   c. Snowplow
   d. Western Tornado Salt Spreader

Hampshire Management LLC No. 25 and 20 ("Hampshire") owns and manages property located at 299 N. Central Avenue, Hartsdale, NY 10530 (the "Hartsdale Property"). (Annexed hereto as **Exhibit "H"** are pictures of the Debtor's vehicles and equipment at the Hartsdale Property).

29. Coincidentally, the Receiver's personal business, Casabella Landscaping, Inc. has a contract with Hampshire for snowplowing and landscaping maintenance for the Hartsdale Property.

30. The Receiver failed to provide the Debtor with many of the documents and information requested by Debtor's counsel, including basic information regarding the status of

8

operations, the parties to which valuable contracts of the Debtor were transferred, and information with respect to other assets, including vehicles and equipment of the Debtor that appear to have been transferred for little, if any, consideration during the receivership.

31. The lack of information received from the Receiver reinforces the Debtor's belief that significant waste of the Debtor's assets has occurred during the receivership and that a number of Debtor's assets were transferred by the Receiver without authority.

32. Furthermore, during the course of the bankruptcy the Receiver has acknowledged that the computer on which the QuickBooks and other books and records of the Debtor are located, was at the Debtor's office when the receivership commenced but that he doesn't know where they are now.

33. As Receiver, Mr. Pignataro was responsible for protecting the Debtor's assets. The Receiver's failure to turn over the computer, and the Receiver's response that he doesn't know what happened to the computer, are unacceptable and further demonstrate the Receiver's disregard for this Court's order.

34. The Receiver has repeatedly violated the TRO and made false representations to this Court and the Debtor.

35. The Receiver's contemptuous behavior leads the Debtor to believe that the Receiver not only remains in possession of valuable equipment, machinery, and tools belonging to the Debtor, but that he has converted same for the benefit of his business Casabella Landscaping, Inc.

36. In addition, the Debtor suspects that the Receiver may have usurped business opportunities and contracts belonging to the Debtor for the benefit of his business Casabella Landscaping, Inc. and further that the Receiver may have transferred or destroyed assets and records of the Debtor.

37. The Receiver's conduct and behavior demonstrate that he violated the TRO and that sanctions should be imposed. In addition to being in contempt of the TRO and Court directives to turn over the Debtor's property. The Receiver's continued use, control, and refusal to turn over the Debtor's property during the bankruptcy constitutes a violation of the bankruptcy stay set forth in Section 362(a)(3) of the Bankruptcy Code, which prohibits among other things any act to exercise control over property of the estate. The Receiver's conduct and disregard for the T.R.O., the Court's directives to turnover the Debtor's property, and the bankruptcy stay constitutes clear grounds for a finding of contempt.

38. The Receiver's actions and willful disregard of the Court's orders, and of his obligations under the bankruptcy code, have frustrated and inhibited the Debtor's ability to prosecute this bankruptcy case, and has strained the Debtor's limited resources that would be better spent on maximizing recoveries for creditors and focusing on reorganization efforts.

## RELIEF REQUESTED AND BASIS FOR RELIEF

39. By this application, the Plaintiff seeks to hold Frank Pignataro as Receiver in contempt and impose sanctions against him under Bankruptcy Rules 9014 and 9020 and Section 105(a) of the Bankruptcy Code.

40. This Court has jurisdiction over the Application pursuant to 28 U.S.C. Sections 157 and 134 and the "Standing Order of Referral of Cases to Bankruptcy Judges" dated July 10, 1984 (Ward, Acting C.J.). Venue in this District is proper pursuant to 28 U.S.C. § 1408.

41. The statutory predicates for the relief sought herein are Section 105 of the United States Bankruptcy Code, Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure. As set forth more fully in the accompanying memorandum of law, the Court should hold the Frank Pignataro as Receiver in Contempt of the TRO and impose Sanctions upon him.

42. In addition, the Debtor requests that Court impose daily sanctions in the amount $500.00 per day in order to compel the Receiver's compliance with the directives of the Court's TRO, and sections 543 and 362(a) of the United States Bankruptcy Code.

43. The United States Court of Appeals for the Second Circuit has made the following statements concerning the elements of civil contempt:

> A court may hold a party in civil contempt for failure to comply with a court order if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner.

*CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).

44. Importantly, the fact that the prohibited act was done inadvertently or in good faith does not preclude a citation for civil contempt, for the sanction is remedial in nature. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979).

45. Here, the consistent failures of Frank Pignataro as Receiver to adhere to the TRO constitute civil contempt.

46. To date, the Debtor has incurred fees in the sum of $1,600.00 for the preparation and filing for this motion. The Debtor's proposed counsel expended four (4) hours drafting the Contempt Motion at the rate of $400.00 per hour in preparation and prosecution of this motion. The Debtor respectfully requests that it be permitted to supplement this request in the future, if necessary.

47. No prior request for the relief sought herein has been made heretofore.

## NOTICE

48. Notice of this application has been provided by first-class mail to: (i) the U.S. Trustee; (ii) counsel to Debtor's post-petition secured lenders; (iii) all parties requiring service pursuant to any applicable bankruptcy rule or local bankruptcy rule. The Debtor submits no other or further notice need be provided.

**WHEREFORE**, Debtor respectfully requests that the Contempt Motion be granted, and that the Debtor be granted such other and further relief as is just and proper.

Dated: White Plains, NY
      June 10, 2022

                                  Respectfully submitted,

By: /s/ James J. Rufo
James J. Rufo, Esq.
The Law Office of James J. Rufo
*Proposed Attorney for the Debtor*
1133 Westchester Avenue, Suite N-202
White Plains, NY 10604
(914) 600-7161
jrufo@jamesrufolaw.com

## DEBTOR'S VERIFICATION

I, LAURA MARCELA PIGNATARO, make the following verification under penalty of perjury, pursuant to 28 U.S.C. 1746:

I am the President and sole owner of 100% of the shares of the debtor and debtor-in-possession Casabella Contracting of N.Y., Inc. in the action herein: I have read the annexed Affirmation in Support of Motion, Exhibits, and Memorandum of Law and know the contents thereof, and the same are true, except to those matters therein which are stated to be alleged upon information and belief, as to those matters, I believe them to be true. My belief as to those matters therein not stated upon knowledge, is based upon facts, books, records, and other pertinent information contained in the Debtor/Plaintiff's records.

Dated: White Plains, NY
       June 10, 2022

*(signature)*

Laura Marcela Pignataro, President
Casabella Contracting of N.Y., Inc.
*Debtor and/or debtor-in-possession*