PENACHIO MALARA, LLP  
Anne Penachio, Esq.  
245 Main Street - Suite 450  
White Plains, New York 10601  
T: (914) 946-2889  
F: (914) 206-4884  

HEARING DATE & TIME:  
**JUNE 28, 2022 at 2:30 PM**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re

CASABELLA CONTRACTING OF NY, INC.,

                              Debtor.

CHAPTER 11

CASE NO.:  22-22205  
(Sub-Chapter V)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**THE OPPOSITION MARCELLA PIGNATARO TO THE MOTION OF THE UNITED STATES TRUSTEE TO DISMISS THE DEBTOR'S CHAPTER 11 CASE OR CONVERT IT TO A <u>CHAPTER 7 PROCEEEDING AND FOR OTHER RELIEF AS IS PROPER</u>**

**TO:     THE HONORABLE SEAN H. LANE,  
        UNITED STATES BANKRUPTCY JUDGE:**

       The opposition of **MARCELLA PIGNATARO.**, the principal of Casabella Contracting of NY, Inc., the ("Debtor"), through her counsel, **PENACHIO MALARA LLP**, to the Motion (the "UST Motion") of the Office of the United States Trustee (the "UST") to dismiss the Debtor's Chapter 11 case or convert it to a case under Chapter 7 and granting such other and further relief as is just and proper, respectfully sets forth and alleges as follows:

**INTRODUCTION**

       1.    The UST Motion should be denied in its entirety on both procedural and substantive grounds for several separate and independent reasons.  The UST has not established "cause" for dismissal or conversion of the Debtor's case under 11 U.S.C. § 1112(b)(1).  The UST Motion and supporting affirmation contains several material errors and omissions. Moreover, even if the UST has established a basis for the relief sought, the case should not be dismissed or converted under 11 U.S.C. § 1112(b)(2) because the Debtor (i) has

1

// CEAFC1~1.WPD v1

cooperated with the UST; (ii) has substantially cured all alleged defects that the UST raised; (iii) is working diligently to address any additional questions that the UST may have; and (iv) is in the process of formulating a Chapter 11 plan which it hopes to file in short order.  In this regard, the Debtor has been attending to identifying and collecting receivables already moved to retain Maltz Auction to sell assets and is formulating a Chapter 11 Small Business Plan predicated on the sale

        2.       The dismissal or conversion of this case would serve no valid purpose and only cause delays and increase expenses including, in the case of conversion, the Chapter 7 trustee's commissions.  It is clear that neither the Debtor, its estate nor the creditors therein would benefit from a conversion or dismissal of the case.

        3.       The delays and expenses would significantly negatively impact Ms. Pignataro who is liable as a guarantor of many of the Debtor's obligations.

        4.       Moreover, there is no valid basis for the UST's  moving forward on an expedited basis.  This case does not implicate a danger to the "public" or present immediate harm to any entity.     The UST's insistence on moving forward on less than 10 days notice is questionable at best especially in light of the fact that the Debtor has been extremely cooperative and responsive and has been working diligently to address all concerns raised by the UST (and any creditors).

        5.       In addition, Sub-Chapter V supplants and modifies the alleged "requirements" that the UST relies upon in support of its motion. Most notably, Sub Chapter V tempers the insurance and reporting requirements for debtors.   Under 11 U.S.C. §§ 1185 and 1116, Sub Chapter V debtors are only required to obtain insurance coverage "customary and appropriate to the industry."   The Debtor is not required to obtain insurance mandated by the UST unless such mandate conforms to "industry standards" and  "is

2

appropriate."   Moreover, while Section 1112(b) is applicable in Sub Chapter V cases, Sub Chapter V provides for "removal of a debtor" only under extreme circumstances (none of which exist here) including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor.  See 11 U.S.C. § 1185.  Good faith delays are not a basis for removal and should not be a basis for conversion.

6.    Finally, there are logical and viable alternatives to the drastic remedy of conversion or dismissal which promote efficiency and the interests of the Debtor, Ms. Pignataro, and all creditors including (i) the imposition of reasonable conditions and deadlines; (ii) appointment of an examiner to investigate any concerns (and likely vindicate the Debtor from any and all allegations of inappropriate conduct which have been bandied about) and (iii) "removal" of the Sub Chapter V Debtor for "cause."   The refusal of the UST to even consider agreeing to an alternate remedy raises concerns.  Manifestly this is inconsistent with the goals promulgated by the UST and its published policy "to further an economical" resolution of the issues.  Notably, instead of focusing on insurance and a plan, Ms. Pignataro must focus on drafting this opposition.

## BACKGROUND

7.    On April 25, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  Following the increase of debt limits in Subchapter V cases enacted on or about June 22, 2022, the Debtor elected to be treated as a Small Business under Sub-Chapter V.  The increase applies retroactively to cases filed on or after March 27, 2022.

8.    The Debtor filed its case on an emergency basis to stay collection efforts of certain creditors and further diminution of value of assets which were under the control of a receiver.

9.     Since the filing, the Debtor has continued in the management of its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors or other statutory committee and no examiner has been appointed

// CEAFC1~1.WPD v1

in this case. The appointment of a Sub-Chapter V Trustee is pending.

10. The Debtor operated a highly successful company engaged in primarily in construction projects. The Debtor's assets consist primarily of receiveables, claims against 3rd parties and vehicles and equipment (collectively, the "Assets"). Its primary creditors are Trufund Financial Services ("Trufund") and Hudson Insurance ("Hudson'). Ms. Pignataro guarantied these obligations.

11. Contrary to the UST's assertion, the Debtor does not own any real estate. It does not have an interest in 182 Lindsey Avenue, Buchanan, NY (the "Lindsey Property"). In fact, the Lindsey Property is owned by a related debtor, 2111 Albany Post Road Corp. Moreover, the Lindsey Property is not currently being marketed for sale. It is disheartening that the UST would rely on information obtained on the "internet" (ie the purported Coldwell Banker listing) without attempting to verify same with Ms. Pignataro or counsel.

12. The misstated ownership of the Lindsey Property is not the UST's only error. The UST is further mistaken in its assertions that the Debtor has not accounted for funds received by the Debtor under the Payroll Protection program ("PPP") and has otherwise breached its fiduciary duties. In fact, Ms. Pignataro has provided the UST with proof of use of PPP funds during the Debtor's control of the business as well as proof of forgiveness. All funds were used for payroll while Ms. Pignataro was in control of the Debtor  See Foregiveness annexed hereto as Exhibit A. (Payroll information, which was supplied to the UST, is not annexed for privacy reasons but can readily be supplied to the Court and interested parties). If the UST requires a further accounting or additional information, Ms. Pignataro and the Debtor should be afforded a reasonable opportunity to do so – Not merely 10 days.

13. The UST, in its zeal to take action, appears to be relying heavily on the statement of the pre-petition receiver. Frank Pignataro (the "Receiver"), without taking steps to verify the validity of his statements or conducting a deposition of Ms. Pignataro. Manifestly, the self serving,

4

unverified statements of the receiver should not form a basis for relief.

        14.     In the context of this Chapter 11 proceeding, Ms. Pigantaro's goal is to propose a viable Chapter 11 plan on behalf of the Debtor funded primarily with the proceeds of receivables and the sale of Assets.

        15.     In furtherance of this goal, the Debtor, with Ms. Pignataro's assistance, has been undertaking steps to maximize assets, collect receiveables, focusing on the largest receivable from Richards Plumbing and has filed an application to retain Maltz.

**THE PROPERTY, INSURANCE, OPERATING REPORTS AND OTHER MATTERS**

        16.     Since the filing, the Debtor has cooperated with the UST and all creditors. Despite delays and difficulties in obtaining documents from the Receiver, the Debtor (i) produced all documents requested by the UST in its possession including bank statements, filed tax returns, evidence of the DIP account, and various pleadings; (ii) appeared at the IDI conducted by the UST, the 341 meeting and, through counsel, at all Court proceedings; (iii) appeared at a deposition of the Receiver and addressed issues relating to the receivership; (vi) formulated the framework of a Chapter 11 plan; and (xii) provided information to the UST regarding the related cases. In sum, the Debtor has shown extraordinary commitment to its case and is moving forward with an exit plan.

        17.     The Debtor learned that its insurance had lapsed upon investigation into its finances after the Receiver produced documents. It is noteworthy that, upon information and belief, although payment for insurance premiums may have lapsed shortly before the receivership, the insurance policy appears to have been cancelled during the receivership and not reinstated by the Receiver in a timely manner.

        18.     The Debtor is in the process of obtaining appropriate insurance. The Debtor is not conducting traditional operation. It has no employees and is not operating a business open to the public. As set forth in the <u>Affirmation of Anne Penachio</u> which will be filed contemporaneously

5

herewith, procuring insurance is extremely time consuming and agents and underwriters require time to review the extensive information and approve the coverage. Often it requires a physical inspection. Unfortunately, the UST does not appear to appreciate the effort that is required to procure insurance especially when a policy is canceled.

19.    As noted, Ms. Pignataro has supplied the UST with information regarding the use of PPP funds received by the Debtor.    Counsel has supplied the UST with evidence of forgiveness that the PPP used while Ms. Pignataro was in control of the Debtor was exclusively used for "pay roll."    Ms. Pignatrao maintains that under her watch, the Debtor used PPP consistent with government mandates. Due to the receivership, the Debtor did not immediately have access to information concerning additional use of funds The Debtor and Ms. Pignataro will attend to any other requests regarding this matter within a reasonable time frame. It is submitted that any rulings regarding the assertions by the UST that the Debtor has not accounted for PPP should at the very least be deferred.

## **THE UST MOTION**

20.    Notwithstanding the Debtor's concerted efforts in the case (which were regularly communicated to the UST), the UST moved to convert or dismiss the case on an expedited basis. In support of position, the UST has made the following allegations (i) delays in the Debtor's ability to obtain insurance; (ii) the fact that a single operating report had not been time filed (Such report covered only the 5 day period between the filing date on April 25 and April 30. The May report was not yet due); (iii) information regarding the Debtor's pre-petition finances including tax returns were not provided (even though such documents had not been produced by the Receiver and his bank); and (iv) the erroneous assertions that the Lindsey Property (which the Debtor does not own) is being marketed without a Court order (which it is not) and the PPP has not been accounted for.[1]

---

1  It is submitted that the UST may well have included these incorrect assertions in its pleadings in an effort to unfairly bolster its position.

6

// CEAFC1~1.WPD v1

21.     The UST sought an expedited hearing on its motion despite the fact that counsel had been regularly communicating with the office (multiple times a day) regarding the Debtor's efforts and progress. Although the UST did not articulate a strong basis for an expedited hearing, counsel understood that if efforts were made to address the issues, the expedited hearing would be adjourned.

**THE CASE SHOULD NOT BE CONVERTED OR DISMISSED**

22.     In support of its motion the UST alleges the Debtor's case should be dismissed or converted for "Cause" under 11 U.S.C. § 1112(b) based upon the following: (i) the Debtor failed to maintain insurance under 112(b)(4)(C) and (ii) the Debtor failed to act as a fiduciary.

23.     As discussed more fully below, the UST Motion should be denied in its entirety. Should the Court be inclined to grant some relief to the UST, various alternate forms of relief are available far less drastic and detrimental to the Debtor and creditors than conversion or dismissal.

**Denial for Absence of Cause**

24.     Section 1112(b)(l) of the Bankruptcy Code, provides that

... on request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

25.     Section 1187 imposes a duty on a Small Business debtor to, among other things, timely file reports and comply with certain requirements enunciated.

26.     "Cause" is defined in § 1112(b)(4), which provides that "the term includes" sixteen acts or defaults by a debtor. These examples are not exhaustive, however, and it has been established since the adoption of § 1112 that Congress used the word "includes" purposefully and that the

grounds listed in the statute are non-exclusive. The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion. See 7 Collier on Bankruptcy, 1112.04[2] (15th ed. rev.2005); *In re Ameribuilders Constr. Management, Inc*., 399 B.R. 129 (Bank S.D.N.Y. 2009); see also *In re WoodbrookAssocs*., 19F.3d 312,317 (7th Cir.1994).

27. Section 1112(b)(4) provides:

For purposes of this subsection, the term 'cause' includes-(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or public (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 34l(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (0) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

1112(b)(4)

28. It is well settled that the Court has wide discretion to determine whether "cause" exists, how ultimately to adjudicate the case and to convert or not convert a case. See *In re New Rochelle Telephone Corp*., 397 B.R. 633 (Bankr. E.D.N.Y. 2008); *In re 1031 Tax Group, LLC,* 374 B.R. 78 (Bankr.S.D.N.Y.2007); *In re State St. Assoc's., L.P*., 348 B.R. 627, 638-39 n. 24 (Banla.N.D.N.Y.2006). Even if there is a finding of cause a court is not obligated to convert the case-the decision remains within the court's discretion. *In re 1031 Tax Group, LLC*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007)

29. In the instant case the Court should deny the relief sought by the UST or grant modified relief for several separate and independent reasons.

8

30. First, the UST has not demonstrated "cause" under Section l 112(b). The Debtor has acted in good faith. It has cooperated with creditors and the UST and will continue to do so. The Debtor's delay in preparing the initial operating report which covered the 5 day period in April from April 25, 2022 to April 30, 2022 is excusable. Like most Small Business debtors, the Debtor simply needed "extra time" with the first report. This is especially understandable in light of the receivership. The Debtor's failure to file the report was not mean spirited or an example of bad faith. Rather, it is based upon the Debtor's decision to focus on complying with other Bankruptcy mandates, an exit plan and the "big picture." Ms. Pignataro, who has been advised of the importance of filing reports, indicated that she will be making efforts to file them on the due date going forward. Indeed, the May report was timely filed.

31. Second, the Debtor's alleged failure to maintain insurance is not a basis for conversion or dismissal. Since the Debtor is not conducting traditional operations, it is unclear how failure to maintain insurance would pose a risk to the public. The UST has failed to explain how the public could possibly be harmed. It is submitted that there is virtually no risk.

32. At any rate, the "failure to maintain insurance" was not willful. Pre-petition, the Debtor was controlled by the Receiver who did not maintain insurance. Even if the Court accepts the Receiver's position that the policy lapsed shortly before his appointment, it may not have been cancelled. Even if it was cancelled, it could have been reinstated following the cancellation.

33. Notwithstanding the Debtor's position that insurance may not needed to "protect the public", the Debtor has been working diligently to procure insurance which is a time consuming process. It is hoped that appropriate insurance will be placed in the upcoming days.

34. It is noteworthy that at least one Bankruptcy Court has applied a materiality standard as to whether a debtor's insurance in place poses a material risk to the estate or the public under § 1112(b)(4)(C) . *In re Melendez Concrete, Inc.,* 2009 WL 2997920 (Bankr. D.N.M. 2009) (absence of certain secured items on insurance policy equipment list not material). See *Deangelis v. KC'S Pub, LLC*

*(In re KC'S Pub, LLC),* 428 B.R. 612, 618 (Bankr. M.D. Pa. 2010).  Courts have also imposed reasonable timeframe upon a debtor to procure insurance.  See *In re Daniels* 362 B.R. 428, 437 (Bankr. S.D. Iowa 2007); *In re Melendez Concrete, Inc.,* 2009 WL 2997920 (Bankr. D.N.M. 2009)

35. Moreover, it is submitted that even if there were no insurance, it is inexplicable how conversion or dismissal would ameliorate any "risk to the public."  Manifestly, a cooperating debtor-in-possession like the Debtor who has undertaken concerted and good faith efforts to obtain appropriate insurance is much less of a risk to the public than if the case were converted or dismissed.  In fact, the "public" is actually at less of a risk.

36. Third, neither conversion nor dismissal would be in the best interests of the Debtor, its estate, the creditors therein.   It is submitted that neither conversion nor dismissal make any sense whatsoever.  It is likely that creditors will receive a greater distribution more quickly in Chapter 11 than they would in the case of dismissal or conversion.

37. The cases relied upon by the UST in support of its motion are distinguishable from the case at hand.  First, they do not deal with the tempered insurance requirement imposed on small businesses under 11 U.S.C. § 1116.  Second, no case implicated a pre-petition receivership pre-petition as it does here.  Third, it does not appear in any of the cases that the debtor was engaging in efforts to obtain insurance as the Debtor is.  Moreover, unlike the situation in this case, in *In re Delta AG Grp., LLC,* 596 B.R. 186 (Bankr. W.D. La. 2019), the debtor was operating a business involving combustionable dust and carbon monoxide which can cause explosions.   Here, the Debtor is not engaging in traditional business activity.

38. Finally, as noted above, although it is unclear whether insurance would even be required or needed to "protect the public" in this case, the Debtor is in the process of obtaining insurance with is customary and appropriate in light of the UST's apparent concerns.

**The UST Motion Should be Denied Under 11 U.S.C. § 1112(b)(2)**

39. The UST Motion should be denied under 11 U.S.C. § 1112(b)(2) which provides as follows:

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11. U.S.C. § 1112(b)(2).

40. In this case, there are several "unusual circumstances" which clearly establish that the converting or dismissing the case is not in the best interests of any party in interest and which support the denial of the UST Motion. Such factors include the following:

A. Conversion or dismissal would not have any material impact on the alleged "threat to the public" that is asserted by the UST in support of the motion. If the Debtor's case is converted or dismissed, the insurance issue would not be resolved. Rather than the extraordinary remedy of conversion or dismissal, the best way to address the issue is to permit the Debtor to obtain any additional insurance that is appropriate in the case.

B. The Debtor has already provided the UST with documents regarding the Debtor's finances (in some cases multiple times). It is awaiting receipt of a final account from the Receiver required under 11 U.S.C. § 543. Manifestly, without an account, the Debtor cannot provide all accurate and complete information to the UST relating to the 90 day pre-petition period it allegedly needs. The Court

11

strongly suggested that the parties cooperate regarding Receivership issues and counsel has endeavored to do so. Based upon the circumstances of this case, the lack of documents and an account by the Receiver should not be a basis for the UST to seek relief against the Debtor. Manifestly, this is unfair.

        C.      The Debtor has been cooperating with the UST[2] and creditors including Hudson and Trufund. It has moved to obtain documents and information from the Receiver. Other than filing the initial operating report covering the 5 day period from April 25 to April 30 late, the Debtor has timely met Court deadlines.

        41.      The Debtor has also established the additional requirements of Section 1112(b)(2). First, in accordance with Section 1112(b)(2)(A), there is a reasonable likelihood that a plan will be confirmed within the timeframes established. As noted, the Debtor is in the process of formulating the framework of a Chapter 11 plan and hopes to file it within a reasonable time.

        42.      Second, under Section 1112(b)(A)(B), the grounds asserted by the UST to convert or dismiss the case include an act or omission by the Debtor

        (i)      for which there exists a reasonable justification for the act or omission; and

        (ii)      that will be cured within a reasonable period of time fixed by the court.

        43.      The Debtor's failure to timely file its first operating report covering the 5 day post-petition period in April 2022 is justified. It was the Debtor's first report and only covered a handful of days. The Debtor was focusing on the "bigger picture", obtaining documents from the Receiver and reviewing them, providing numerous documents to the UST, working on a plan. The "late" failing was cured. All operating reports are current.

        44.      The Debtor will address all other financial matters raised by the UST as soon as

---

2  Ms. Pigantaro continues to hope that the UST will reciprocate this cooperation and extend cooperation to the Debtor and related debtors.

reasonably possible either following receipt of the Receiver's final account under 11 U.S.C. § 543 or prior thereto when access is granted to documents and they are compiled in an organized fashion (unless the UST prefers a "document dump" which is highly doubted).

45. The Debtor's difficulties with procuring insurance are being addressed. As noted, the Debtor has kept the UST apprised of efforts on a regular basis and will continue to do so.

46. It is submitted that, should the Court be inclined to grant some relief to the UST, a reasonable "cure period" would be appropriate under 11 U.S.C. § 1112(b)(2)(A) and the circumstances of this case.

## ALTERNATIVES TO DISMISSAL OR CONVERSION

47. In the event that this Court determines that "cause" may exist for conversion or dismissal under Section 1112(b), the Debtor respectfully requests that the Court refrain from immediately converting the case but rather impose reasonable conditions upon the Debtor as the Court did in *New Rochelle Telephone Corp.*, 397 B.R. 633 (Bankr. E.D.N.Y. 2000). For example, the Court could require weekly progress reports" to be filed, or impose a timetable for action. This would be consistent with the Court's ruling in *In re Daniels* 362 B.R. 428, 437 (Bankr. S.D. Iowa 2007) where the Court set deadlines for procuring insurance and "curing" other alleged defaults (virtually all of which implicate information from the Receivership and a final account from the Receiver required under 11 U.S.C. § 543). See also *In re Melendez Concrete Inc.*, No. 11-09-12334 JA (Bankr. D.N.M. Sep. 15, 2009) (Court imposed reasonable deadlines for obtaining insurance pending consummation of Chapter 11 plan).

48. If the UST is concerned about the conduct of the Debtor, Ms. Pignataro and/or the Receiver,[3] the Debtor would consider consenting to the appointment of an examiner to review the matter

---

3  Although the UST cites insurance and operating report deficiencies in its motion, these factors appear to be merely "low hanging fruit." The UST's motivation in pursuing conversion or dismissal may well be based upon unsubstantiated and wholly inaccurate assertions made by the Receiver which the Debtor has not been afforded the opportunity to dispute.

13

and render an independent report (subject to a reasonable budget).

## IMPACT OF SECTION 1185 OF THE BANKRUPTCY CODE

49. Section 1185 of the Bankruptcy Code governs removal of a debtor-in-possession under Sub Chapter V. It is submitted that while the provisions of Sub Chapter V do not supplant the ability to seek relief under Section 1112(b), they should be considered.

50. Section 1181 of the Bankruptcy Code expressly states that "Sections 105(d), 1101(1), 1104, 1105, 1106, 1107, 1108, 1115, 1116, 1121, 1123(a)(8), 1123(c), 1127, 1129(a)(15), 1129(b), 1129(c), 1129(e), and 1141(d)(5) of this title do not apply in a case under this subchapter" 11 U.S.C. 1185.

51. Most importantly, Sub Chapter V effectively imposes termpered requirements regarding insurance. It only requires a debtor in Sub Chapter V to "maintain insurance customary and appropriate to the industry." It is unclear from the UST Motion what, if any, insurance would be appropriate for a debtor with no employees and which is not conducting traditional operations.

52. Sub Chapter V also includes a provision for removal of a debtor-in-possession (as opposed to conversion to Chapter 7). Pursuant to 11 U.S.C. § 1187, "[o]n request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter." 11 U.S.C. § 1187.

53. It is submitted that rather than convert the case under Section 1112, the UST should proceed under Section 1187 and seek relief for "cause" (But because 'cause" does not exist, it is unlikely that the UST will seek removal under Section 1187).

14

## EVIDENTIARY HEARING

54. This case is important to Ms. Pignatrao as reflected in the time and attention that she has dedicated to this case as the Debtor's principal. If the Court is not inclined to deny the UST Motion, the Debtor requests that an evidentiary hearing be scheduled under Local Bankruptcy Rule 9014-2 which states that:

The first scheduled hearing in a contested matter will <u>not</u> be an evidentiary hearing at which witnesses may testify, unless:

(a)     the Court gives prior notice to the parties that such hearing will be an evidentiary hearing;

(b)     the motion requests emergency relief and is made at the commencement of the case;

(c)     the motion requests interim or final relief under sections 363(b), 363(c)(2)(B) or 364 of the Bankruptcy Code;

(d)     the motion requests the Court's approval of rejection of an unexpired lease of real property under section 365(a) of the Bankruptcy Code, and a timely objection thereto is filed;

(e)     the hearing is on confirmation of a plan in a case under chapter 9, chapter 11, chapter 12, or chapter 13 of the Bankruptcy Code; or

(f)     Repealed. .

55. Potential witness would include Ms. Pignatrao, James Gannone, who submitted an affirmation in support of the UST Motion, the Sub Chapter V trustee in related cases, and an expert in insurance coverage (to rebut any evidence presented by the UST that insurance coverage is not "appropriate" or in conformity with "industry standards" as well as materiality). The Debtor will endeavor to submit sworn declarations prior to any evidentiary hearing.

**RESERVATION OF RIGHTS**

56.     Because the UST chose to move on an expeditated basis, Ms. Pignataro was required to respond on a shortened time period.  The Debtor reserves all rights to supplement this opposition.

**WHEREFORE**, it is respectfully requested that this Court deny the UST's motion in its entity, defer it pending further review, and grant all other relief that it deems just and proper.

Dated:  White Plains, New York
        June 24, 2022

**PENACHIO MALARA, LLP**

/s/ Anne Penachio
Anne Penachio
Counsel to the Debtor
245 Main Street-Suite 450
White Plains, NY 10601
(914) 946-2889

16

/ / CEAFC1~1.WPD v1