James J. Rufo, Esq.
The Law Office of James J. Rufo
*Proposed Attorney for Debtor*
1133 Westchester Avenue, Suite N-202
White Plains, NY  10604
(914) 600-7161
jrufo@jamesrufolaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| CASABELLA CONTRACTING OF N.Y., INC., | CASE NO. 22-22205 (SHL) |
| DEBTOR | |

----------------------------------------------------------------X

**DEBTOR'S AFFIRMATION IN OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION FOR AN ORDER TO CONVERT OR DISMISS CHAPTER 11 CASE**

James J. Rufo, Esq., of The Law Office of James J. Rufo, proposed attorney for the debtor and debtor-in-possession Casabella Contracting of N.Y., Inc. (the "Debtor"), makes the following Affirmation in Opposition to the Motion (the "Motion") for an Order Converting this Case to one under Chapter 7 or Dismissing this Chapter 11 Case that was filed by the United States Trustee's Office on June 16, 2022. In support of the Motion, the Debtor respectfully submits the following:

**PRELIMINARY STATEMENT**

I make this Affirmation in Support of Debtor's Opposition to the United States Trustee's Office's (the "UST") Motion (the "Motion") for an Order Converting this Case to one under Chapter 7 or Dismissing this Chapter 11 Case on the grounds that the Motion is defective, procedurally, substantively, and premature. The Motion alleges that cause exists to either convert the Debtor's case to chapter 7 or dismiss it because the Debtor does not have insurance, the Debtor has not demonstrated that it can act as a fiduciary, the Debtor has not filed its required financial statements, i.e., tax returns and monthly operating reports, and the Debtor has not accounted for its Paycheck Protection Program Loans ("PPP").  The UST has not established "cause" for dismissal or conversion of the Debtor's case under 11 U.S.C. § 1112(b)(1).  The

Debtor's case should not be converted or dismissed because, the Debtor (i) has cooperated with the UST's office from the inception of this case; (ii) has substantially cured all alleged defects alleged by the UST; (iii) working tirelessly to address any additional questions submitted by the UST's office; and (iv) is working to put together a feasible Subchapter V Plan.

Since the filing of the Motion, the Debtor filed its April and May 2022 monthly operating reports, provided the UST's office with proof that the approximately 90% of the Debtor's first PPP loan was forgiven. The Debtor is very close to curing of the alleged defects raised by the UST in the Motion.

In addition, the Motion and Affidavit in Support, boldly assert that the both the Debtor and the Debtor's counsel appeared at hearing for an affiliated case on June 15, 2022 (the "June 15 Hearing"), and that the Debtor made statements concerning the merits of its case. Contrary to the UST's assertions, the Debtor's case was not on the court's calendar on June 15, 2022, Debtor's counsel did not receive a Zoom invite to attend the June 15 Hearing, and most importantly, neither the Debtor nor Debtor's counsel attended the June 15 Hearing.  Not only does the Motion allege that the Debtor and its counsel were at the June 15 Hearing, but it also recklessly claims that Debtor's counsel acknowledged it had no insurance at said hearing. **See, pg. 3, ¶ 9, pg. 6, Sec. B, ₽ 2, and pg. 3, Footnote 3 Motion [ECF No. 51].** Therefore, the UST's reliance upon all statements made by the Debtor at the June 15 Hearing to support its argument are meritless and unequivocally false.

Furthermore, the UST's reliance on the testimony of the state court receiver Frank Pignataro (the "Receiver") at the deposition conducted by the UST on June 13, 2022, is misplaced and without merit. Throughout this case, the Receiver has made contradictory statements about his management of the Debtor's business affairs, the Debtor's lack of insurance, and the status of the Debtor's applications to for forgiveness of Paycheck Protection

2

Program loans. The Receiver's mismanagement of the Debtor's business is among the primary reasons why the Debtor filed its chapter 11 case.

Although section 1112(b) of the Bankruptcy Code applies in subchapter V cases, Subchapter V provides for "removal of a debtor" only under extreme circumstances (none of which exist here) including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor. *See* 11 U.S.C. § 1185. Good faith delays are not a basis for removal and should not be a basis for conversion.

Conversion of the Debtor's case will result in the delay and substantial reduction of distributions to the Debtor's creditors, because the Debtor will have to pay a chapter 7 trustee's commission, attorneys' fees, and any other professional fees incurred by the Debtor, and it could take months if not years before any distributions were made to the Debtor's creditors. Alternatively, if the Debtor remained in Subchapter V these fees would be eliminated resulting in greater distributions to its creditors.

## BACKGROUND FACTS

1.      On April 25, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating and managing its affairs as a Debtor in Possession under Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor's petition and amended petition both state that the Debtor's principal place of business is located at 182 Lindsey Avenue, Buchanan, NY 10511 ("182 Lindsey"), and both state that the location of principal assets is 2111 Albany Post Road, Montrose, NY 10548 ("2111 Albany Post Road").

3.      The Debtor is a New York Corporation organized under the laws of the State of New York. The Debtor is a construction and general contracting company that performs residential and commercial building renovations, carpentry, floor work, commercial

3

construction, drainage contracting, and excavation contracting. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

    4.    The Debtor's is also certified as a Minority/Women/Disadvantaged Business Enterprise M/W/DBE and qualified to perform Commercial and State Funded Projects in the New York Metro Area. Using its M/W/DBE certifications, the Debtor procured construction contracts with many of New York's prominent government agencies such as the DEP ("Department of Environmental Protection") and OGS ("Office of General Services"). In addition, the Debtor began performing prevailing rate jobs and entered into collective bargaining agreements with approximately nine (9) trade unions in New York. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

    5.    From 2012 to 2019, the Debtor maintained a staff from fifteen (15) to fifty (50) employees, with an office and mobile of staff ranging from six (6) to nine (9) employees.

    6.    The Debtor utilized the Women Minority Disadvantaged Business Certifications which allowed it to make bid and secure contracts for NY State and Federal projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

    7.    In or about September 28, 2017, the Debtor's estranged husband, Frank Pignataro incorporated Casabella Landscaping, Inc.  Casabella Landscaping performed residential and commercial landscaping jobs, snow removal, and small construction projects.  **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

    8.    In 2019, the Debtor's principal and her estranged husband Frank Pignataro, began to experience marital problems that put a strain on the Debtor's day-to-day business operations.

    9.    As a result, Mr. Pignataro began to interfere with the Debtor's daily operations to expand his influence and exercise control over the Debtor's principal and the Debtor's contracted projects. For example, Mr. Pignataro scheduled meetings with contractors, project managers, union members and foreman in secret, and without Debtor's principal being present. Mr.

Pignataro's actions led to a breakdown in communication between the Debtor's principal and her staff which had a detrimental effect on the management of the Debtor's works in progress. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

10. In March of 2020, the Debtor was subject to numerous work stoppages that continued to the present date. Most of these work stoppages were the result of the Covid-19 pandemic, rising construction material costs, and supply chain issues that hindered the Debtor's ability to realize profits from its projects. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

11. The Covid-19 pandemic intensified the Mr. and Mrs. Pignataro's marital troubles and ultimately, on August 13, 2021, Mr. Pignataro filed an action for divorce in the Westchester County Supreme Court, Index No.61117/2021. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

12. On September 24, 2021, Hon. Lewis J. Lubell, J.S.C. appointed Frank Pignataro the temporary Receiver of the Debtor. Judge Lubell is the presiding judge in the pending divorce case, Frank Pignataro v. Laura M. Pignataro, in the Supreme Court of the State of New York, County of Westchester, Index No. 61117/2021. The law firm of Mackey, Butts, & Whalen, LLP has been acting as attorneys for the receiver. **See, ¶ 1 of the LR 1007-2 Affidavit of Laura Marcella Pignataro [ECF # 5]**.

13. On the April 25, 202, the Debtor filed a Motion to Set the Last Day to File Proofs of Claim with service being effectuated on April 27, 2022 at ECF Nos. 8 and 11. On June 2, 2022, the Court entered an Order Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof with the Proofs of Claim due by July 7, 2022 (the "Bar Date Order"), the Clerk of the Court established July 7, 2022, as the last day by which certain proof of claim could be timely filed (the "Bar Date") with October 22, 2022, being the last day by which government proofs of claim could be timely filed at ECF No. 40. Written

notice of the Bar Date was mailed to, among others, all creditors listed on the Schedules by the Clerk of the Court (See, ECF Doc. No. 41).

14. On the April 25, 202, the Debtor filed an Application to Employ James J. Rufo, Esq., of The Law Office of James J. Rufo as Counsel to Debtor and Debtor in Possession, *Nunc Pro Tunc* at ECF No. 6. No opposition was filed and an Order Authorizing the Debtor to Retain James J. Rufo, Esq., of The Law Office of James J. Rufo has been submitted to chambers for review.

15. On the April 25, 202, the Debtor filed an Application to Employ Charles A. Higgs, Esq., of the Law Office of Charles A. Higgs as Special Litigation Counsel to Debtor and Debtor in Possession, *Nunc Pro Tunc* at ECF No. 9. No opposition was filed and an Order Authorizing the Debtor to Retain Charles A. Higgs, Esq., of the Law Office of Charles A. Higgs as Special Litigation Counsel to Debtor and Debtor in Possession has been submitted to chambers for review.

16. On May 3, 2022, the Debtor filed a Motion to Compel Pursuant to Section 543 of the Bankruptcy Code, Directing the Receiver to Deliver the Debtor's Property to the Debtor, and Enjoining the Receiver from Interfering with the Debtor's Operations at ECF No. 23 and an *Ex Parte* Application for a T.R.O. and for a Hearing on Shortened Notice at ECF No. 24.

17. On May 4, 2022, Your Honor entered a Temporary Restraining Order (the "TRO") and Scheduling Hearing on Debtor's Motion with the Hearing to be held on May 12, 2022.

18. Specifically, the TRO directed the Receiver to comply with, in part, the following:

> 2. Pending a hearing and determination of the Motion, the Receiver, his agents, and any other person under his direction, are temporarily restrained, and enjoined from interfering with the Debtor's business and the Debtor's ability to operate their business as Debtor in possession.

6

>3. Pending a hearing and determination of the Motion, the Receiver Frank Pignataro, shall not make any disbursements from, or take any action in the administration of (i) property or alleged property of the Debtor; (ii) proceeds, product, offspring, rents, or profits of such property; or (iii) property of the Debtor's estate, except to the extent that a disbursement is necessary to preserve the value of the Debtor's estate and, in such case, notice of such disbursement shall be provided in advance to the Debtor's counsel and the United States Trustee's Office.
>
>4. For the avoidance of doubt, all proceedings involving the Debtor pending in any other court are hereby stayed pursuant to Section 362(a) of the Bankruptcy Code until further order of this Court.

See **Exhibit A**, pg. 2, ¶¶ 2, 3, & 4.

19. The Receiver has demonstrated throughout this case that he has no intention of complying with the directives of the TRO as he continues to interfere with the Debtor's business and refuses to turnover property to the Debtor.

20. On June 10, 2022, the Debtor filed an *Ex Parte* Application for FRBP 2004 Examination of Frank Pignataro at ECF No. 44.

21. On June 10, 2022, the Debtor filed an *Ex Parte* Application for FRBP 2004 Examination of Ryan Chianelli at on June 10, 2022, at ECF No. 45.

22. On June 10, 2022, the Debtor filed Motion for Contempt against the pre-petition receiver, Frank Pignataro for Violation of this Court's Temporary Restraining Order, dated May 4, 2022 (the "Motion for Contempt"), filed on June 10, 2022, at ECF No. 46. The Motion for Contempt is scheduled for a hearing on July 6, 2022, at 2:00 P.M.

23. On June 16, 2022, the US Trustee's Office file a Motion (the "Motion") for an Order Converting this Case to one under Chapter 7 or Dismissing this Chapter 11 Case at ECF No. 51.

24. On June 17, 2022, the Debtor filed Application to Employ Maltz Auctions as Auctioneer with presentment to be held on July 5, 2022, at ECF No. 52.

25. On June 18, 2022, the Debtor filed its monthly operating report of April and May 2022.

26. On June 21, 2022, President Biden signed the Bankruptcy Threshold Adjustment and Technical Corrections Act (S. 3823), into law increasing the Subchapter V debt limit to $7,500,000.00.

27. On June 22, 2022, the Debtor filed an Amended Voluntary Petition and an Election to Proceed under Sub chapter V of Chapter 11 at ECF No. 57.

28. On June 27, 2022, the Debtor's principal Marcela Pignataro filed Opposition to the Motion at ECF No. 61.

29. On June 27, 2022, the US Trustee filed a Notice of Appointment of Trustee in a Chapter 11 Subchapter V Case at ECF No. 62.

## THE DEBTOR'S CASE SHOULD NOT BE CONVERTED TO A CASE UNDER CHAPTER 7 OR DISMISSED

30. The US Trustee's Motion should be denied in its entirety because the US Trustee has failed to establish cause.

31. Section 105(a) of the Bankruptcy Code provides, in part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. sec 105(a).

32. Section 1112(b)(1) of the Bankruptcy Code provides that after notice and a hearing, a court may dismiss a case for cause unless it determines that the appointment of a Trustee or examiner is in the best interest of the creditors and the estate or unusual circumstances are found and specifically identified establish that dismissal is not in the best interest of creditors or the estate. The determination of cause and the decision to dismiss a chapter 11 Bankruptcy case pursuant to section 1112(b)(1) rests within the sound discretion of the court. See *In re Nugelt, Inc.*, 142 Bankr. 661,665 (Bankr. D.Del.1992) (stating that "[c]ourts have wide latitude

in determining whether cause exists to convert or dismiss" a chapter 11 bankruptcy case); *In re 3868-70 White Plains Rd.*, 28 Bankr 515 (Bankr. SDNY 1983).

33.     Section 1112(b)(4) of the Bankruptcy Code identifies certain examples of Cause for dismissal of a chapter 11 case, including the "absence of a reasonable likelihood of rehabilitation" 11 U.S.C. § 1112(b)(4).  A Bankruptcy court, however, is not constrained by those enumerated examples and may find "cause" based on the facts and circumstances of the particular chapter 11 case.  See *In re 3868 -70 White Plains Rd.*, 28 Bankr. At 519.  *In re Julian* Bankr. D. Conn., Case # 11-30151 ECF No. 143 February 15, 2012.

34.     It is well settled that the Court has wide discretion to determine whether "cause" exists, how ultimately to adjudicate the case and to convert or not convert a case. *See In re New Rochelle Telephone Corp.*, 397 B.R. 633 (Bankr. E.D.N.Y. 2008); *In re 1031 Tax Group, LLC*, 374 B.R. 78 (Bankr.S.D.N.Y.2007); *In re State St. Assoc's., L.P.*, 348 B.R. 627, 638-39 n. 24 (Banla.N.D.N.Y.2006). Even if there is a finding of cause a court is not obligated to convert the case-the decision remains within the court's discretion. *In re 1031 Tax Group, LLC*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007).

35.     Here, the Debtor has not established cause to dismiss the Debtor's case.

36.     The Motion centers on the US Trustee's allegations that the Debtor has failed to obtain property insurance for its rental properties; however, the Debtor does not own any real property.  The Debtor's affiliate 2111 Albany Post Road owns real property, not the Debtor.

37.     It follows that the Debtor does not collect rental income from the tenants at 182 Lindsay or 2111 Albany Post Road; therefore, the US Trustee's assertions that the Debtor needs property insurance for its rental properties is wholly without merit and entirely unsupported by fact.

38. The US Trustee goes on to argue that the Debtor is marketing the 182 Lindsey property without approval by this Court. Again, the Debtor does not own 182 Lindsey; therefore, this argument is woefully without merit and inapplicable to this case.

39. However, the Debtor is presently in contact with an insurance provider to obtain general motor vehicle insurance and coverage for its construction equipment. Nonetheless, if the Debtor's request to employ Maltz Auctions as its auctioneer, it can store its property at the auctioneer's facility and the property will be covered by Maltz's insurance.

40. Next the US Trustee alleges that the Debtor has failed to act as a fiduciary. In support, the US Trustee alleges that the Debtor's failure to account for rents collected and failure to obtain approval from the Court to market its real property for sale. Again, the Debtor does not own or claim to own any real property; therefore, the US Trustee's argument is without merit because it relies on facts that do not apply to the Debtor.

41. In addition, the US Trustee claims that the Debtor failed to act as a fiduciary because it has not accounted for its PPP loans. This statement is inaccurate.

42. The Debtor has provided the US Trustee with proof that 90% of its 1st PPP Loan has already been forgiven. The Debtor is presently in contact with its 2nd PPP loan lender to obtain information about its 2nd PPP loan; namely, whether the Receiver took any action to seek forgiveness of sad loan. (Annexed hereto to as **Exhibit "B"** is a copy of a letter from the SBA confirming that 90% of the 1st PPP Loan was forgiven).

43. Furthermore, the Receiver's actions and willful disregard of the Court's orders, and of his obligations under the bankruptcy code, have frustrated and inhibited the Debtor's ability to prosecute this bankruptcy case, and has strained the Debtor's limited resources that would be better spent on maximizing recoveries for creditors and focusing on reorganization efforts. The Receiver's continued violation of the TRO are the sole reason for all delays in the Debtor's prosecution of this case.

44. Here, the US Trustee has failed to establish cause for conversion or dismissal based on facts and circumstances of this case; therefore, the Motion must be denied in its entirety. See 11 U.S.C. § 1112(b)(4).

45. Neither conversion nor dismissal would be in the best interests of the Debtor, its estate, the creditors therein. Conversion of the Debtor's case will result in the delay and substantial reduction of distributions to the Debtor's creditors.

## RESERVATION OF RIGHTS

46. As a result of the US Trustee's choice to move on an expedited basis, the Debtor was required to respond on a shortened time; therefore, the Debtor reserves all rights to supplement this opposition.

**WHEREFORE**, Debtor respectfully requests that the Motion be denied in its entirety, and that the Debtor be granted such other and further relief as is just and proper.

Dated: White Plains, NY
June 27, 2022

Respectfully submitted,

By:   */s/ James J. Rufo*
James J. Rufo, Esq.
The Law Office of James J. Rufo
*Proposed Attorney for the Debtor*
1133 Westchester Avenue, Suite N-202
White Plains, NY 10604
(914) 600-7161
jrufo@jamesrufolaw.com